IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

02 JUL 31  PM 6: 32

U.S. ____ ____URT
N.D. C____ ___ ALA

LAWRENCE DEE WEEMS,               }
                                  }
   Plaintiff,                     }
                                  }
v.                                }   CASE NO. CV 00-B-1221-S
                                  }
CITY OF TRUSSVILLE, ALABAMA, and  }
JOHN M. SELF,                     }   **ENTERED**
                                  }
   Defendants.                    }   **AUG - 1 2002**

## MEMORANDUM OPINION

Currently before the court is a Motion for Summary Judgment filed by Defendants City of Trussville, Alabama ("the city"), and John M. Self ("Self"). Plaintiff Lawrence Dee Weems ("plaintiff" or "Weems") asserts federal claims pursuant to 42 U.S.C. § 1983 alleging that defendants violated his constitutional rights. Plaintiff also asserts state law claims of false arrest, negligence and wantonness, and malicious prosecution against both defendants, and a state law claim of failure to train, supervise, and discipline against the city. Upon consideration of the record, the submission of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendants' motion is due to be granted.

### I. SUMMARY OF FACTS

At approximately six o'clock on December 8, 1995, Trussville Police Officers were dispatched to plaintiff's residence in Trussville, Alabama, on a report that shots had been fired and two men were down at that location. (DX 3 at 25; PX 8.)[1] Officers Marshall Walk and Jeff

---

[1] The evidence attached to the Notice of Filing of Exhibits in Support of the Motion for Summary Judgment of Defendants City of Trussville, Alabama and John M. Self will be referenced as "DX" followed by the corresponding tab number. The evidence attached to the Notice of Filing of Exhibits in Support of Plaintiff's Memorandum in Opposition to Motion for



Bridges were the first police officers to arrive. (DX 3 at 26.) Officer Phillips was the third officer to arrive and testified that he arrived within five minutes after hearing the call on the radio. (DX 5 at 8.) Plaintiff had been involved in an altercation with Don Weiffenbach ("Weiffenbach") during which gunshots were exchanged. (Compl. ¶ 5.)

Upon arrival, the officers found Weiffenbach in the kitchen bleeding profusely from a gunshot wound in his arm. (PX 11 at 2.) Plaintiff was lying face down in the driveway with multiple gunshot wounds. (*Id.*) The officers found several spent bullet casings on and around the driveway. (*Id.*) The officers called for the paramedics who were already en route, (*id.*), and secured the crime scene and the weapons involved in the incident. (DX 3 at 27; DX 5 at 9.) The paramedics took plaintiff to Carraway Methodist Medical Center and took Weiffenbach to BMC Montclair. (PX 11 at 3.) Later, Self, at that time a Sergeant at the Trussville Police Department, (PX 7 at 32), arrived and took charge of the crime scene and the investigation, (DX 6 at 120, 121). That night, Self interviewed and took statements from plaintiff's wife, Beverly Weems, her son, Mark Kimberly, and his wife, Angela Kimberly.[2] (DX 6 at 122, 123; *see* DX 9, 10, 11.) Self also took Weiffenbach's statement at BMC Montclair and the statement of another witness, Robert Wells. (PX 7 at 147; *see* DX 12, 13.) During his interview, Weiffenbach told Self that plaintiff was the aggressor and shot first.[3] (DX 12 at 2.) Self went to Carraway to interview plaintiff but was unable to do so because of plaintiff's condition. (PX 7 at 145.)

---

Summary Judgment will be referenced as "PX" followed by the corresponding tab number.

[2] Angela Kimberly reported only that "she did not see anything." (DX 11.)

[3] In a deposition, Beverly Weems testified that one night, Weiffenbach admitted to her that he in fact had fired the first shot. (PX 14 at 28, 33.)

2

At the time, plaintiff and Beverly Weems were in the process of divorcing. (PX 11 at 4.) Weiffenbach, a private investigator who Beverly Weems had hired to investigate her husband's possible extramarital affairs, was called to the residence to check the phone lines for possible tampering. (*Id.* at 3; DX 2 at 5.) After examining the telephone junction box, Weiffenbach returned to his car to retrieve some equipment from the trunk of his car. (DX 2 at 5, 6.) At plaintiff's preliminary hearing, Weiffenbach testified that while he was standing in front of his open car trunk, he heard a man scream. (*Id.* at 6.) Weiffenbach turned around and saw plaintiff pointing a pistol at him. (*Id.*) According to Weiffenbach, Weems screamed at him and threatened him. (*Id.* at 6, 7.) Weiffenbach moved away from Weems, but Weems kept screaming and coming towards him. (*Id.* at 7.) Weiffenbach drew his gun and Weems pushed him down and kicked him. (*Id.* at 7, 8.) Weiffenbach testified that he rolled over on his back and Weems fired his gun, hitting Weiffenbach in the arm. (*Id.* at 8, 9.) Weiffenbach began shooting at Weems and unloaded his whole clip of bullets. (*Id.* at 9, 10.) Weiffenbach shot fifteen times, striking plaintiff eleven times. (*Id.* at 24; Compl. ¶ 6.)

Plaintiff, however, contends that Weiffenbach fired first:

> Don Weiffenbach fired his gun at the plaintiff and shot him five to six times. There was a fifteen-second pause. Weiffenbach then shot the plaintiff five to six more times. The plaintiff was shot a total of approximately eleven (11) times by Weiffenbach. After being shot, the plaintiff fired one time at Weiffenbach in self defense and the shot barely grazed Weiffenbach's arm.

(Compl. ¶ 6.) Plaintiff's attorney, Bobby Hornsby, testified that a neighbor, Jackie Pate, told him that he did not see the incident, but heard the gunshots, and corroborated Weems contention that there was a series of shots, followed by a long pause, which was followed by another round

3

of gunfire.[4]  (PX 4 at 23-24.)   Officers found only one shell casing from plaintiff's gun, (DX 6 at 152), which is consistent with plaintiff's claim that he only fired once rather than Weiffenbach's recollection that plaintiff shot multiple times, (DX 2 at 24).  Neither Beverly Weems nor Mark Kimberly saw who fired the first shot.[5]  (DX 7; DX 9 at 2; DX 10 at 2.)

On January 5, 1996, Weiffenbach executed a sworn complaint against plaintiff for attempted murder. (*See* DX 16.)  That same day, Jefferson County District Judge Cahill issued a warrant for plaintiff's arrest. (*Id.*)   On April 9, 1996, plaintiff was arrested. (*See* DX 17 at 1.)  On June 12, 1996, a preliminary hearing was held before Judge Cahill, during which Weiffenbach testified for the state and Self testified for plaintiff. (*See* DX 2 at 1, 2.)  At the conclusion of the preliminary hearing, the case was "bound over to the Grand Jury." (*Id.* at 46.)  The Grand Jury issued a "true bill," indicting plaintiff for attempted murder. (DX 18 at 46.)  Following a trial, plaintiff was acquitted on December 10, 1998. (Compl. ¶ 12.)

On March 13, 2000, plaintiff filed this lawsuit in the Circuit Court of Jefferson County, asserting state law claims of false arrest, negligence and wantonness, and malicious prosecution against both defendants, and a state law claim of failure to train, supervise, and discipline ("failure to train") against the city. (*See* Compl.)  Plaintiff also asserts federal claims pursuant to 42 U.S.C. § 1983 alleging violations of his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. (*See id.*)  Defendants timely removed the suit to the United States

---

[4] Hornsby testified that he told Self about Pate's account of the incident before a warrant was issued for Weems's arrest. (PX 4 at 22, 24, 25.)  Self did not speak to Pate prior to the warrant being issued. (PX 7 at 147.)

[5] Wells, who accompanied Weems to the house, told Self that the first shots were fired by neither plaintiff nor Weiffenbach, but by another person, who he took to be Weiffenbach's partner, hiding in the bushes. (DX 13 at 1-2.)

District Court for the Northern District of Alabama pursuant to 28 U.S.C. § 1441(b).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III. DISCUSSION

### A. STATUTE OF LIMITATIONS DEFENSE

Defendants contend that plaintiff's state law claims for false arrest, negligence and wantonness, and failure to train, supervise, and discipline are time-barred by the statute of

limitations. (Defs' Brief at 13.) The statute of limitations defense is an affirmative defense that defendants have the initial burden to allege and prove. *Parrish v. City of Opp, Ala.*, 898 F. Supp. 839, 841 (M.D. Ala. 1995). Plaintiff's false arrest, negligence and wantonness, and failure to train claims are governed by § 6-2-38(l) of the Code of Alabama which provides that personal injury actions that do not arise from contract and are not specifically enumerated in the section must be brought within two years of the action's accrual. Plaintiff's false arrest, negligent and wanton conduct, and failure to train claims accrued on the date of plaintiff's arrest. *See Couch v. City of Sheffield*, 708 So. 2d 144, 154 (Ala. 1998). Therefore, these claims accrued on April 9, 1996, the date plaintiff was arrested, (*see* DX 17 at 1), and, tolling excepted, are time-barred unless brought by April 9, 1998. Plaintiff does not contend that these claims were tolled for any reason. Therefore, these claims which plaintiff brought on March 13, 2000, are time-barred by the statute of limitations.

Defendants also contend that plaintiff's section 1983 claims are barred by the statute of limitations. (Defs' Brief at 13.) "[Where] the federal act upon which a plaintiff relies does not contain a statute of limitations, federal courts must rely on the limitations period prescribed by the state in which the litigation arose." *Parrish*, 898 F. Supp. at 841-42 (citing *Sewell v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers*, 445 F.2d 545, 548 (5th Cir. 1971)).[6] Because section 1983 does not contain a statute of limitations, the court turns to Alabama state law for the appropriate limitations period. *See Parrish*, 898 F. Supp. at 842. To select the appropriate state limitations period, a section 1983 claim is characterized as an action for

---

[6] The Eleventh Circuit has adopted as binding precedent all decision of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

personal injuries. *Id.* (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)). Plaintiff's 1983 claims are subject to the limitations period set forth in § 6-2-38(l) of the Alabama Code which provides that a personal injury action must be brought within two years of the accrual of the action. *Parrish*, 898 F. Supp. at 842.

In 1983 actions, state law governs the length of the limitations period and questions of tolling. *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987). However, federal law governs when a section 1983 action accrues. *Id.* A section 1983 action does not accrue "until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Mullinax*, 817 F.2d at 716 (citations omitted). The court agrees that "under federal law, a claim for false arrest accrues on the date of the arrest." *Parrish*, 898 F. Supp. at 843. The court is also of the opinion that plaintiff's section 1983 claims for negligence, wantonness, and failure to train also accrued on the date of his arrest, because had at that point in time been injured by defendants' conduct which is allegedly unconstitutional and either was or should have been aware of facts supporting these causes of action.

However, the court is of the opinion that plaintiff's section 1983 claim for malicious prosecution is not time-barred. In Alabama, malicious prosecution claims have a two year statute of limitations. *See* ALA. CODE § 6-2-38(h). Therefore, absent tolling, the claim is time-barred unless it accrued on or after March 13, 1998. The Alabama Supreme Court has held "that a malicious prosecution action does not accrue until the time for filing a notice of appeal in the underlying case has expired; and, if an appeal is taken, the action for malicious prosecution will not accrue until the appeal has been finally decided." *Barrett Mobile Home Transp., Inc. v.*

7

*McGugin*, 530 So. 2d 730, 733 (Ala. 1988). However, federal law rather than state law governs when a section 1983 action accrues. *See Mullinax*, 817 F.2d at 716. Because under federal law a cause of action cannot accrue until there are facts to support it, *see id.*, and one of the elements of a malicious prosecution claim is the resolution of a prior proceeding initiated by defendant in plaintiff's favor, *Wal-Mart Stores, Inc. v. Goodman*, 789 So. 2d 166, 174 (Ala. 2000), facts cannot sufficiently support a malicious prosecution claim until the prior judicial proceeding has actually been resolved. A section 1983 action based on malicious prosecution should accrue upon dismissal of the criminal charges rather than at the arrest or initiation of the suit. *Albright v. Oliver*, 510 U.S. 266, 280 (1994) (Ginsburg, J., concurring). Although the court is not bound by the Alabama Supreme Court's conclusion that a malicious prosecution action does not accrue until the time for appealing the prior proceeding has expired or the appeal has been finally decided, it is persuaded that a section 1983 action for malicious prosecution cannot accrue until the prior proceeding against the plaintiff has been dismissed. Because the criminal charges against plaintiff out of which the instant action arose were not dismissed until December 10, 1998, (Compl. ¶ 12), and the statute of limitations on malicious prosecution actions is two years, *see* ALA. CODE § 6-2-38(h), plaintiff's section 1983 action for malicious prosecution filed on March 13, 2000, is timely.

## B. STATE LAW CLAIMS

### 1. False Arrest[7]

Plaintiff alleges that defendants arrested plaintiff without probable cause. (Compl. ¶ 14.) In Alabama, "[f]alse imprisonment consists of the unlawful detention of the person of another for

---

[7] This claim is time-barred by the statute of limitations. *See supra* at 6.

8

any length of time whereby he is deprived of his personal liberty." *Crown Cent. Petroleum Corp. v. Williams*, 679 So. 2d 651, 653 (Ala. 1996) (citing ALA. CODE § 6-5-170). Even if this claim were not time-barred, defendants contend that they are entitled to judgment as a matter of law on plaintiff's false arrest claim because plaintiff was arrested pursuant to a valid warrant issued by Judge Cahill. (Defs' Brief at 6.) The court agrees.[8]

The Alabama Supreme Court has ruled that "a plaintiff is not entitled to recover for false arrest or imprisonment where he or she is arrested pursuant to a valid warrant issued by a lawfully authorized person." *Ennis v. Beason*, 537 So. 2d 17, 19 (Ala. 1988) (citation omitted). It is undisputed that plaintiff was arrested pursuant to a valid warrant issued by District Judge Cahill, (*see* DX 16; DX 17 at 1), and that Alabama law authorizes district court judges to issue arrest warrants, (*see* ALA. CODE § 15-6-21(a)). Furthermore, a lack of probable cause for the issuance of the warrant does not affect the underlying validity of the warrant and does not call into doubt the lawfulness of the arrest undertaken pursuant to it. *See Goodwin v. Barry Miller Chevrolet, Inc.*, 543 So. 2d 1171, 1176 (Ala. 1989) (holding that summary judgment on false imprisonment claim was appropriate where plaintiff was arrested pursuant to a warrant issued by a lawfully authorized person even though there was a question of fact as to whether there was reasonable cause for the warrant's issuance). Therefore, defendants are entitled to judgment as a matter of law on this count whether or not probable cause supports the warrant.[9]

---

[8] Plaintiff provides no grounds for opposing judgment as a matter of law on this claim. (Pl's Brief.)

[9] The court disagrees with plaintiff's contention that the warrant is unsupported by probable cause. *See infra* at 11-13.

### 2. Malicious Prosecution

Plaintiff claims that defendants committed malicious prosecution by prosecuting plaintiff without probable cause. (Compl. ¶ 20.) To make out a malicious prosecution claim, plaintiff must show "(1) that the present defendant instituted a prior judicial proceeding against the present plaintiff; (2) that in instituting the prior proceeding the present defendant acted without probable cause and with malice; (3) that the prior proceeding ended in favor of the present plaintiff; and (4) that the present plaintiff was damaged as a result of the prior proceeding." *Wal-Mart Stores, Inc. v. Goodman*, 789 So. 2d 166, 174 (Ala. 2000). Malicious prosecution claims are not favored at law and summary judgment is appropriate unless plaintiff presents evidence by which the trier of fact could reasonably infer each element of the tort. *Skinner v. Etheridge*, 564 So. 2d 902, 903 (Ala. 1990). Defendants contend that they are entitled to judgment as a matter of law on this claim because plaintiff has presented no evidence by which a reasonable juror could find that plaintiff has met either of the first two elements. (*See* Defs' Brief at 7-8.) The court agrees.

The first element requires plaintiff to show that "the present defendant instituted a prior judicial proceeding against the present plaintiff . . . ." *Goodman*, 789 So. 2d at 174. Defendants argue that they cannot be held liable for malicious prosecution because Weiffenbach rather than either defendant instituted the proceeding against plaintiff by swearing out an arrest warrant on plaintiff. (Defs' Brief at 7.) The court agrees. "It is axiomatic that there can be no cause of action for malicious prosecution unless the evidence shows that the judicial proceeding was instigated by the defendant." *Alabama Power Co. v. Neighbors*, 402 So. 2d 958, 962 (Ala. 1981). It is undisputed that Weiffenbach rather than either of the defendants swore out the

10

warrant pursuant to which plaintiff was arrested. (*See* DX 16.) Furthermore, at plaintiff's preliminary hearing, Weiffenbach rather than Self or any other agent of the city testified for the State. (*See* DX 2 at 2.) Weems called Self to testify. (*See id.*) Plaintiff has offered no evidence by which a reasonable factfinder could find that either Self or the city instigated the criminal proceeding against Weems.

Even if Self or the city had instigated the proceeding against plaintiff, they would still be entitled to judgment as a matter of law because there was probable cause to believe that plaintiff was guilty of the crime charged. The second element requires plaintiff to show "that in instituting the prior proceeding the present defendant acted without probable cause and with malice." *Goodman*, 789 So. 2d at 174.

Plaintiff's acquittal does not create an inference or presumption that there was a lack of probable cause when the prosecution was instigated. *Alabama Power Co. v. Neighbors*, 402 So. 2d 958, 967 (Ala. 1981) ("[T]he mere fact that the plaintiff was acquitted of the charge does not prove that there was no probable cause to believe him or her guilty at the time the warrant was issued."). On the other hand, "an indictment by a grand jury against one charged with crime is prima facie evidence of the existence of probable cause . . . ." *Id.* (quoting *Union Indemnity Co. v. Webster*, 118 So. 794 (Ala. 1928)). In the instant case, Judge Cahill concluded that probable cause existed to arrest plaintiff at the preliminary hearing and the grand jury indicted plaintiff. (*See* DX 2 at 46; DX 18 at 46.) However, this "prima facie defense can be overcome by a showing that the indictment was 'induced by fraud, subornation, suppression of testimony, or other like misconduct of the party seeking the indictment.'" *Lumpkin v. Cofield*, 536 So. 2d 62, 64 (Ala. 1988) (quoting *National Sec. Fire & Cas. Co. v. Bowen*, 447 So. 2d 133, 140 (Ala.

11

1983)).

Plaintiff argues that under *Lumpkin* there is a fact issue as to probable cause because "Self made no real attempt to locate a witness, Jackie Pate, who could corroborate Weems' story, nor did he interview Weems or his doctor which he could have easily done before a warrant was issued for Weems." (Pl's Resp at 11-12.) This argument is without merit. Although there is evidence by which a trier of fact could infer that Self, like the *Lumpkin* defendant, had made inadequate efforts to locate a witness, (*see* PX 4 at 22, 24, 25; PX 7 at 147), the instant case is distinguishable from *Lumpkin*. While the *Lumpkin* defendant instigated the prosecution of the plaintiff by swearing out a warrant for his arrest, *see Lumpkin*, 536 So.2d at 65, Self did not instigate the prosecution. While there was evidence that the *Lumpkin* defendant made inadequate efforts to locate an exculpatory witness and concealed the fact of his cursory search from the assistant district attorney, *see Lumpkin*, 536 So. 2d at 65, Pate is not an exculpatory witness and there is no evidence that Self concealed Pate's account of the incident from anyone. Although Self was not able to speak to plaintiff before the warrant was issued, the evidence shows that he attempted to do so. Applying the *Lumpkin* rule, because there is no evidence that Self or any other agent of the city engaged in fraud, subornation, suppression of testimony, or other misconduct in investigating the incident, plaintiff has failed to rebut defendants' prima facie evidence of the existence of probable cause. *See Lumpkin*, 536 So. 2d at 64.

In malicious prosecution cases, probable cause is "such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty." *Goodman*, 789 So. 2d at 174 (citations omitted). Weiffenbach's testimony establishes probable cause. Because there was

probable cause to believe that Weems was guilty of attempted murder, or, alternatively, because neither Self nor any other agent of the city instigated Weems's prosecution, defendants are entitled to judgment as a matter of law on this count.[10]

### 3. Negligence, Wantonness, and Failure to Train Claims[11]

Plaintiff claims that "[a]s a proximate result of defendant Self's negligent and wanton misconduct . . . plaintiff was prosecuted maliciously . . . ." (Compl. ¶ 18.) Plaintiff also claims that "[a]s a proximate result of the City of Trussville's failure to train, supervise, and discipline Officer Self, plaintiff Weems was prosecuted maliciously . . . ." (Compl. ¶ 25.) The court agrees with defendants' characterization of these claims as "merely a recital of Plaintiff's false arrest and malicious prosecution claims." (*See* Defs' Brief at 13.) Recognizing that malicious prosecution claims are disfavored in the law, the Alabama Supreme Court has noted that the "policy disfavoring malicious prosecution claims would also disfavor bringing claims arising out of facts within the ambit of malicious prosecution but couched in other terms, especially general allegations of negligence, willfulness, or wantonness." *Cutts v. American United Life Ins. Co.*, 505 So.2d 1211, 1214 (Ala. 1987). Negligence and wantonness claims are due to be dismissed where they are based upon facts that give rise to false arrest or malicious prosecution claims. *See Montgomery v. City of Montgomery*, 732 So. 2d 305, 308 (Ala. Civ. App. 1999) (despite allegations of negligence, recklessness, and wantonness, court concluded in suit arising out of

---

[10] Because under Alabama law, a municipality is not responsible for the acts of its officers, agents, or servants in making false arrests or for instituting a malicious prosecution, *see Dickinson v. City of Huntsville*, 2001 WL 1474317, at *5 (Ala. Nov. 21, 2001), the city is entitled to judgment as a matter of law on this ground on plaintiff's claims for false arrest and malicious prosecution.

[11] These claims are time-barred by the statute of limitations. *See supra* at 6.

13

arrest under warrant of the wrong person that the only cause of action properly raised was the malicious prosecution claim); *Grant v. Dolgen Corp.*, 738 So.2d 892, 897 (Ala. Civ. App. 1998) (though concluding that fact issues precluded summary judgment on false imprisonment claim, the court concluded that defendant was entitled to judgment as a matter of law on plaintiff's negligence and wantonness claims arising out of the same facts). Therefore, plaintiff's negligence, wantonness, and failure to train claims are due to be dismissed as a matter of law.

### C. DISCRETIONARY FUNCTION IMMUNITY AGAINST STATE LAW CLAIMS

Defendants also argue that they are entitled to judgment as a matter of law from plaintiff's state law claims because they are immune from suit. (Defs' Brief at 15, 19.)[12] Under the Alabama Constitution, "[s]tate officers and employees . . . are absolutely immune from suit when the action is, in effect, one against the state." *Montgomery*, 732 So. 2d at 310 (citing ALA. CONST. of 1901, art. I, § 14). However, the Alabama Constitution does not grant immunity to municipalities and their agents. *Montgomery*, 732 So. 2d at 310. In 1994, the state legislature granted immunity to municipal police officers from tort liability arising out of the performance of discretionary functions within the scope of their duties. *See* ALA. CODE § 6-5-338(a).[13]

---

[12] The court declines to address the City's argument that it is entitled to substantive immunity.

[13] Section 6-5-338(a) provides in pertinent part:
Every peace officer . . . appointed or employed as such peace officer by . . . [a] municipality . . . whose duties . . . include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

14

Discretionary acts are acts about which "there is no hard and fast rule as to course of conduct that one must or must not take" and acts requiring "exercise in judgment and choice and [involving] what is just and proper under the circumstances." *Montgomery*, 732 So. 2d at 310 (citations omitted; brackets in original). An officer's decision to arrest a suspect is a discretionary function for which officers are immune from liability. *See id.* at 311. Section 6-5-338 extends discretionary immunity to a municipal police officer "unless the officer's conduct is so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith." *Id.* Because each act that Self committed involved the investigation and arrest of plaintiff and there is no evidence that Self acted maliciously or in bad faith, Self has immunity from plaintiff's state law claims. *See id.* at 310, 311.

### D. SELF'S LIABILITY UNDER SECTION 1983

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). The first step in evaluating a section 1983 claim "is to identify the specific constitutional right allegedly infringed." *Albright*, 510 U.S. at 271. Plaintiff contends that his section 1983 claim is "based in part on his unlawful arrest which constituted a violation of his Fourth Amendment rights" and "the claim that he was arrested without probable cause in violation of his rights as set out under the Fourth Amendment to the U.S. Constitution."[14] (Pl's Brief at 13, 14.) Under the dictates of the Fourth Amendment,

---

[14] In his complaint, plaintiff also asserts violations of the First, Fifth, Eighth and Fourteenth Amendments. (*See* Compl. ¶ 27.) Because in opposing defendants' motion for summary judgment, plaintiff makes no mention of these claims, the court does not consider them.

15

an arrest is lawful if it is supported by probable cause, which is "defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense." *Garstein v. Pugh*, 420 U.S. 103, 111 (1975) (internal quotations and citations omitted).

Plaintiff does not offer evidence of any Fourth Amendment violation involving plaintiff's arrest. Plaintiff was arrested pursuant to a valid warrant issued by a duly authorized judge. Weiffenbach's testimony establishes probable cause. There is no evidence that Self or any other police officer concealed evidence, suppressed testimony, or engaged in fraud or other misconduct in investigating the incident. Because plaintiff's arrest is supported by probable cause, it does not give rise to a violation of the Fourth Amendment. Consequently, Self is entitled to judgment as a matter of law on plaintiff's section 1983 claims.

Defendants contend that even if plaintiff could establish the violation of a constitutional right, Self would still be immune from suit. (Defs' Brief at 15.) Qualified immunity offers "complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (citations and internal quotations omitted). The immunity allows government officials to carry out discretionary duties without fear of litigation and liability. *Id.* at 1194. The Supreme Court has enunciated a two-part test for evaluating claims of qualified immunity. *Id.* "As a 'threshold question,' a court must ask, '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If a constitutional right would have been violated

under the plaintiff's version of the facts, the court must then determine 'whether the right was clearly established.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). The second inquiry is undertaken "in light of the specific context of the case" and "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201, 202. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* (citation omitted).

There is no doubt that Self was acting in his discretionary capacity in investing the incident and arresting plaintiff. At the threshold question, it is clear that taken in a light most favorable to plaintiff, the facts do not show that Self's conduct violated a constitutional right. If plaintiff's version of the story is accepted, Weiffenbach rather than plaintiff shot first and Weiffenbach rather than plaintiff committed attempted murder. Weiffenbach then lied in swearing out the warrant for plaintiff's arrest. Plaintiff contends that if Self had investigated the case more thoroughly and had interviewed all material witnesses, including Pate and plaintiff himself, then Self would have learned that Weiffenbach rather than plaintiff was the culpable party. Even so, Weiffenbach's sworn testimony, whether true or not, establishes probable cause to issue a warrant for plaintiff's arrest. There is no constitutional right to be free from an arrest under warrant procured through false testimony where no state actor knew or had reason to know that the testimony was false.

Even if plaintiff had prevailed on the threshold inquiry, there is no suggestion that plaintiff's right to be free from arrest under these circumstances was clearly established. Plaintiff offers no support for the proposition that a reasonable officer would know that Self's

17

conduct was unlawful. Therefore, Self is entitled to judgment as a matter of law on plaintiff's section 1983 claim because plaintiff has failed to offer any evidence by which a reasonable juror could conclude that a constitutional right has been infringed, and alternatively, because Self is entitled to qualified immunity from plaintiff's section 1983 claim.

### E. THE CITY'S LIABILITY UNDER SECTION 1983

Even if plaintiff had stated a viable section 1983 claim, the city cannot be held liable. "The Supreme Court has placed strict limitations on municipal liability under section 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). "There is no respondeat superior liability making a municipality liable for the wrongful actions of its police officers in making a false arrest." *Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "[A] municipality may be held liable for the actions of a police officer only when municipal 'official policy' causes a constitutional violation." *Gold*, 151 F.3d at 1350 (citing Monell, 436 U.S. at 694-95). The city "is not automatically liable under section 1983 even if it inadequately trained or supervised its police officers and those officers violated [plaintiff's] constitutional rights." *Gold*, 151 F.3d at 1350. However, a municipality may be liable under section 1983 when "the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Id.* (citations omitted). Because a municipality generally does not have an express policy of inadequately training or supervising its employees, "plaintiff may prove a city policy by showing that municipality's failure to train evidenced a 'deliberate indifference' to the rights of its inhabitants . . . ." *Id.* "To establish a 'deliberate or conscious choice' or such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to

18

train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Id.*

Defendants contend that plaintiff "has failed to show that there is either a policy or a practice or custom to falsely arrest or maliciously prosecute individuals or to fail to adequately train, supervise, and discipline its police officers." (Defs' Brief at 11-12.) There is no evidence of a city policy endorsing false arrests, malicious prosecutions or inadequate training of its police officers. Moreover, plaintiff has failed to offer any evidence that the city's failure to train evidenced a "deliberate indifference" to the rights of its inhabitants. Plaintiff offers no evidence that the city knew of a need to train or supervise officers in a particular area or that it made a deliberate choice not to take action. Therefore, the city is entitled to judgment as a matter of law on plaintiff's section 1983 claim.

## IV. CONCLUSION

For the reasons stated herein, the court is of the opinion that defendants' motion for summary judgment is due to be granted. Defendants are entitled to judgment as a matter of law on all of plaintiff's claims. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this _31st_ day of July, 2002.

_Sharon Lovelace Blackburn_
**SHARON LOVELACE BLACKBURN**
United States District Judge